UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SABRINA HAMMOND and TANIA
ALEXANDER,

    Plaintiffs,

v.                                     Case No. 09-12331

NORTHWEST AIRLINES and          HONORABLE AVERN COHN
JANE DOE, Female Flight Attendant,

    Defendants.

_____/

## MEMORANDUM AND ORDER
## DENYING NORTHWEST AIRLINES' MOTION TO DISMISS

I.  Introduction

This is a tort case.  Plaintiffs Sabrina Hammond (Hammond) and Tania Alexander (Alexander) are suing defendants Jane Doe (Flight Attendant Doe) and Northwest Airlines (Northwest) (collectively Northwest) claiming assault and intentional infliction of emotional distress.

Before the Court is Northwest's motion to dismiss on the grounds that (1) Hammond and Alexander's claims are preempted by the Airline Deregulation Act of 1978, 49 U.S.C. §1301, and (2) even if their claims are not preempted, they are precluded by the authority given to the airline in 49 U.S.C. §44902(a) to remove passengers who might be inimical to safety.  For the reasons that follow, the motion will be denied.

II. Background

The following facts are taken from the complaint and are presumed true for purposes of the motion to dismiss.

Hammond and Alexander were ticketed passengers who boarded a Northwest flight en route from Miami to Detroit on April 17, 2009. The events as set forth in the complaint are:

> 9. . . . Plaintiffs carried on the acceptable allotted pieces of luggage for any individual passengers.
>
> 10. . . . Plaintiff Hammond was attempting to place her luggage in an overheard compartment on the plane when Defendant Northwest Airline's employee, a female flight attendant approached Plaintiff Hammond.
>
> 11. . . . Plaintiff Hammond whom was a former flight attendant for several years understood the instructions for preparing for flight.
>
> 12. . . . [Flight Attendant Doe] . . . approached Plaintiff Hammond and directed her to place her luggage in a different location other than above her seat.
>
> 13. . . . Plaintiff Hammond sought to discuss with her [Flight Attendant Doe] about the issue of the most suitable place for her luggage based on her experience and knowledge regarding flight regulations.
>
> 14. . . . [Flight Attendant Doe] . . . became indignant and agitate and began to talk and act hostile and threatening to Plaintiff Hammond.
>
> 15. . . . because of the language and conduct of [Flight Attendant Doe] . . . aggressiveness toward Plaintiff Hammond put her in fear of receiving a battery upon her body by [Flight Attendant Doe].
> . . .
> 18. . . . [Flight Attendant Doe] . . . called the airline security and had Plaintiff removed from the flight along with Plaintiff Alexander who was not part of the conflict.

Hammond and Alexander are suing Flight Attendant Doe and Northwest, claiming (1) assault and (2) intentional infliction of emotional distress.

III. Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombley, 550 U.S. 544, 545 (2007). See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir.2007). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." Aschcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1950 (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. at 1949 (internal quotation marks and citation omitted).

IV. Analysis

A. Preemption

From 1958-1978, the Federal Aviation Act permitted passengers to pursue common law or state statutory remedies against airlines. Fenn v. American Airlines, Inc., 839 F. Supp. 1218, 1219 n. 1 (S. D. Miss. 1993). In 1978, however, the Federal

Aviation Act was amended by the Airline Deregulation Act.  Section 1305, a part of the Airline Deregulation Act (ADA), provides, in relevant part:

> (a) Preemption
>
> (1) ... no State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority ... to provide air transportation.

The purpose behind § 1305 was "[t]o ensure that the States would not undo federal deregulation with regulation of their own . . . by prohibiting the States from enforcing any law 'relating to rates, routes, or services' of any air carrier."  Morales v. Trans World Airlines, Inc., 504 U.S. 374, ----, 112 S.Ct. 2031, 2034 (1992).

Section 1305, however, did not repeal § 1506 of the Federal Aviation Act.  Section 1506, part of the Federal Aviation Act since its passage in 1958, is a "savings clause," and provides that "[n]othing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."  49 U.S.C. § 1506.  The extent to which § 1305 limits § 1506 is unclear.

The Supreme Court dealt with the preemptive effect of § 1305 in Morales, supra, explaining that Congress included the express preemption provision "to ensure that the states would not undo federal deregulation with regulation of their own."  Id. at 378.  However, the Supreme Court indicated there were limits on the ADA's preemptive scope, stating, "we do not, as [defendant] contends, set out on a road that leads to preemption of state laws against gambling and prostitution as applied to airlines," and "[s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a

manner to have preemptive effect." Id. at 390.

The Supreme Court revisited the preemption issue in American Airlines, Inc. v. Wolens, 513 U.S. 219 (1995), holding that a common law breach of contract suit was not preempted because the claim simply sought to hold the parties to their agreements. Id. at 229.  The Wolens majority did not directly address whether common law torts were preempted.  Justice Stevens and Justice O'Connor, however, discussed the issue in their dissenting opinions.  Justice Stevens argued that "Congress did not intend to give airlines free rein to commit negligent acts subject only to the supervision of the Department of Transportation, any more than it meant to allow airlines to breach contracts with impunity." Id. at 237 (Stevens, J., concurring in part and dissenting in part).  Justice O'Connor stated, "my view of Morales does not mean that personal injury claims against airlines are always preempted." Id. at 242 (O'Connor, J., concurring in the judgment in part and dissenting in part).  Therefore, though the Supreme Court has not yet directly addressed whether state tort claims are barred by the preemption clause, it has strongly indicated that they would not be barred.

Here, resolution of whether Hammond and Alexander's claims are preempted hinges on the definition of "services" in § 1305.  Northwest argues that the claims center around Flight Attendant Doe's actions regarding baggage handling procedures which directly implicates the services of the air carrier under § 1305.  Hammond and Alexander suggest that the Flight Attendant Doe's outrageous conduct cannot be considered a "service" at all, and that Northwest's interpretation of § 1305 would bar passengers from ever maintaining a state tort action against an airline when its conduct in providing a service results in personal injury.

The Court of Appeals for the Sixth Circuit has not addressed the issue of the ADA's preemption clause and state tort claims. Other circuits have, with conflicting views. In Hodges v. Delta Airlines, Inc., 44 F.3d 334 (5th Cir. 1995) (en banc), the plaintiff brought state tort claims against Delta Airlines based on injuries sustained when a case of rum fell out of an overhead compartment. The Fifth Circuit adopted the following definition of "services" for § 1305 purposes:

> a bargained-for or anticipated provision of labor from one party to another ... Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself. These matters are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline. It is these features of air transportation that we believe Congress intended to de-regulate as "services" and broadly to protect from state regulation.

Id. at 336. Because the plaintiff's claim did not encompass this definition, it was not preempted.

Adopting definitions of "services" similar to the one employed in Hodges, some courts have held that state law personal injury actions are never preempted under section 1305. Stagl v. Delta Air Lines, Inc., 849 F.Supp. 179, 182 (E.D.N.Y.1994) (section 1305 "necessarily exclude[s] an air carrier's common law duty to exercise ordinary care from preemption.") (quoting Butcher v. City of Houston, 813 F.Supp. 515, 517-18 (S.D.Tex.1993)). See also Dudley v. Business Express, Inc., 1994 WL 558680 at *5 (D.N.H. October 11, 1994) (personal injury actions fall outside the sweep of § 1305) (citing O'Hern v. Delta Airlines, 838 F. Supp. 1264, 1267 (N.D. Ill. 1993)); Jamerson v. Atlantic Southeast Airlines, Inc., 860 F. Supp. 821, 826 (M.D. Ala. 1994) (same); Union Iberoamericana v. American Airlines, Inc., 1994 WL 395329 at *3 (S.D.

6

Fl. July 20, 1994) ("run-of-the-mill negligence and breach of contract claims" are not specifically aimed at regulating rates, routes, or services, and therefore not preempted).

In contrast, the Ninth and Third Circuits have held that "service[s]" under section 105 means only air transportation. Charas v. Trans World Airlines, Inc., 160 F.3d 1259, 1266 (9th Cir. 1998)(en banc)(interpreting "service" to refer only to "the provision of air transportation to and from various markets at various times"); Taj Mahal Travel, Inc. v. Delta Airlines Inc., 164 F.3d 186, 193-94 (3d Cir. 1998) (similar).

In Air Transport Association of America, Inc. v. Cuomo, 520 F.3d 218 (2d Cir. 2008) (ATA), the Second Circuit rejected the Third and Ninth Circuit's approaches on the grounds that it was "inconsistent with the Supreme Court's decision in Rowe v. New Hampshire Motor Transp. Ass'n, ---U.S. ----, 128 S.Ct. 989, 169 L.Ed.2d 933 (2008), where] the Supreme Court necessarily defined 'service' to extend beyond prices, schedules, origins, and destinations." ATA, 520 F.3d at 223. The Second Circuit held "that requiring airlines to provide food, water, electricity, and restrooms to passengers during lengthy ground delays does relate to the service of an air carrier," noting that a majority of the circuits had found the term "service" to "refer [ ] to the provision or anticipated provision of labor from the airline to its passengers and [to] encompass[ ] matters such as boarding procedures, baggage handling, and food and drink." Id.

Finally, in Rombom v. United Air Lines, 867 F. Supp. 214 (S.D.N.Y. 1994), the district court discussed the divergent case law and articulated a three part "intermediate approach" in determining whether preemption is warranted under section 1305. The threshold inquiry in deciding whether state claims against an airline are preempted by section 1305 is whether the activity at issue is an airline service. Id. If a court

determines that the activity is not an airline service for section 1305 purposes, then the preemption inquiry ceases and the state law claims are actionable. Id. at 222. If, however, the activity at issue implicates an airline service, a court must then address the second prong: whether plaintiff's claims affect the airline service directly as opposed to "tenuously, remotely, or peripherally." Id. If the state claims have only an incidental effect on the airline service, there is no preemption. The third prong of the preemption inquiry focuses on whether the underlying tortious conduct was reasonably necessary to the provision of the service. Id. In other words, section 1305 "cannot be construed in a way that insulates air carriers from liability for injuries caused by outrageous conduct that goes beyond the scope of normal aircraft operations." Rombom, 867 F. Supp. at 222. If, in contrast, the service was provided in a reasonable manner, then preemption is appropriate.

    In the absence of any controlling precedent, and after considering the varied approaches, the Court adopts the three part test in Rombom to determine whether Hammond and Alexander's claims are preempted. It is clear that the first prong of the preemption inquiry is satisfied. Flight Attendant Doe's conduct during the boarding stage of a flight, specifically, instructions as to the proper handling of baggage, constitutes an airline service within the meaning of section 1305. Whether the requirements of the second prong are met, however, proves to be a more difficult question. Northwest suggests that Flight Attendant Doe's actions are based merely on the manner in which the attendant provided this service, and thus the tort claims affect the service directly rather than tenuously. Such an interpretation weighs in favor of preemption. However, the nature of Hammond and Alexander's allegations i.e., assault

and intentional infliction of emotional distress, would indicate that Flight Attendant Doe acted outside the scope of her authority. Thus, because Hammond and Alexander's claims are based on the notion that Northwest abused its authority to provide a given service, preemption under section 1305 is not warranted. See id. at 224 ("Because the flight crew's decision to have [plaintiff] arrested was allegedly motivated by spite or some unlawful purpose, [plaintiff]'s subsequent tort claims arising out of this decision are at best tenuously related to an airline service.").

Even assuming that Hammond and Alexander's claims directly implicate an airline service, Northwest's preemption argument fails under the third prong of the test because the issue of whether Northwest, via Flight Attendant Doe, acted reasonably remains in dispute. Under the facts alleged in the complaint, Northwest cannot be said to have provided any airline service in a reasonable manner. Plaintiffs allege that after the baggage conflict arose, they were directed to leave the airplane without explanation. At this early stage in this litigation, it cannot be said that Northwest's actions were reasonable. As such, Hammond and Alexander's claims are not preempted. See Peterson v. Continental Airlines, Inc., 970 F. Supp. 246 (S.D.N.Y. 1997) (state tort claims arising from a seating conflict during boarding on a flight not preempted); Doricent v. American Airlines, Inc., No. 91 Civ. 12084Y, 1993 WL 437670, at *5 (D.Mass. Oct.19, 1993) (no preemption because plaintiff's claims of "[r]acial discrimination, the intentional infliction of emotional distress, and assault and battery have nothing whatsoever to do with any legitimate or quasi-legitimate industry-wide practice of affording airline service"); Diaz-Aguasviva v. Iberia Lineas Aereas de Espana, 902 F.Supp. 314, 319 (D.P.R.1995) ("tortious conduct of an airline is not a

9

regular or typical 'service' provided by the airline industry"), vacated in part on reconsideration on other grounds, 937 F.Supp. 141 (D.P.R.1996).

### B. Preclusion by Airline's Authority to Maintain Safety on Aircraft

Northwest alternatively argues that Hammond and Alexander's claims are barred by federal law. The Federal Aviation Act states, "assigning and maintaining safety [ranks] as the highest priority in air commerce." 49 U.S.C. § 40101(a)(1). The Act also states,

> Subject to regulations of the Under Secretary, an air carrier, intrastate air carrier, or foreign air carrier may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety.

49 U.S.C. § 44902(b). A carrier's refusal to transport a passenger cannot give rise to a claim for damages unless the carrier's decision was arbitrary and capricious. Williams v. Trans World Airlines, 509 F.2d 942, 948 (2d Cir.1975); Schaeffer v. Cavallero, 54 F. supp. 2d 350, 351 (S.D.N.Y.1999). It is the plaintiff's burden to show that the decision not to transport was arbitrary and capricious. Cerqueira v. American Airlines, 520 F.3d 1 (1st Cir. 2008).

Hammond and Alexander say that Flight Attendant Doe directed Hammond to place her luggage in a different area, and instead of following instructions Hammond "sought to discuss" this matter with the flight attendant. Plaintiffs' Complaint, ¶¶12-13. Hammond refused to follow Flight Attendant Doe's instructions. While it is reasonable for Northwest to decide that passengers who refuse to follow the instructions of the flight crew might be inimical to safety, it cannot be said at this stage that Northwest acted within its authority under section 44902(b) to remove Hammond and Alexander from the flight. This is a motion to dismiss, not a motion for summary judgment. The record is

not sufficiently developed at this stage to determine whether the decision to remove Hammond and Alexander from the flight was arbitrary and capricious.[1]

## V.  Conclusion

Overall, while the allegations in the complaint are perhaps not as complete as they could be, they are sufficient to require an answer.  For the reasons stated above, Northwest's motion to dismiss is DENIED.

SO ORDERED.


   s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  November 25, 2009


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, November 25, 2009, by electronic and/or ordinary mail.

   s/LaShawn R. Saulsberry
Case Manager, (313) 234-5160

---

[1] In Al-Watan v. American Airlines, 07-14687 (E.D. Mich. Sept. 3, 2009), a judge in this district held that plaintiffs' state tort claims for false imprisonment, intentional infliction of emotional distress and negligence were preempted and subject to dismissal because the airline acted reasonably.  The district court did not engage in a detailed preemption analysis.  Moreover, the plaintiffs' claims in Al-Watan claims focused on the airline's decision to remove them from the plane.  Here, Hammond and Alexander's claims focus on the actions of Flight Attendant Doe even though they were eventually removed.  Moreover, the district court's decision was at the summary judgment stage, where the record contained more facts as to the events.  For these reasons, Al-Watan is not applicable to this case.