UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SABRINA HAMMOND and TANIA
ALEXANDER,

    Plaintiffs,

v.                                         Case No. 09-12331

NORTHWEST AIRLINES and              HONORABLE AVERN COHN
JANE DOE, Female Flight Attendant,

    Defendants.

_____/

# MEMORANDUM AND ORDER
# GRANTING NORTHWEST AIRLINES' MOTION FOR SUMMARY JUDGMENT
# (Doc. No. 23)
# AND DISMISSING CASE[1]

I. Introduction

This is a tort case. Plaintiffs Sabrina Hammond (Hammond) and Tania

Alexander (Alexander) are suing defendants Jane Doe (Flight Attendant Doe[2]) and

---

[1]Although the Court originally scheduled this matter for hearing, the Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

[2]Plaintiffs took no steps to ascertain the identify of Flight Attendant Doe before the close of discovery. It appears that Plaintiffs conducted no discovery with the exception of having their depositions taken. Northwest says that Plaintiffs first served discovery on it on April 2, 2010, the discovery cut off date. Plaintiffs did not take any depositions or obtain the passenger list, which Northwest offered to produce to plaintiffs after plaintiffs agreed to a protective order. The record supplied by Northwest contains incident reports from several flight attendants, including the flight attendant directly involved in the incident. From these reports, the identity of Flight Attendant Doe appears to be Jacqueline Varner. Although Plaintiffs in their response seek to amend the complaint to add her as a defendant, given the Court's resolution of the motion, it is not necessary.

Northwest Airlines (Northwest) claiming (1) assault and (2) intentional infliction of emotional distress.[3]

Before the Court is Northwest's motion for summary judgment on the grounds that plaintiffs have adduced no evidence to support their claims.[4]  For the reasons that follow, the motion will be granted.

## II.  Background

The material facts as gleaned from the parties' papers follow.[5]

Plaintiffs were ticketed passengers on a Northwest flight bound for Detroit from Jacksonville, Florida on April 23, 2009.[6]  Plaintiffs were traveling with a group of

---

[3] Northwest previously filed a motion to dismiss on the grounds that Plaintiffs' claims were preempted and otherwise barred under federal law.  The Court denied the motion.  See Memorandum and Order Denying Northwest Airline's Motion to Dismiss, filed November 25, 2009 (Doc. No. 13).

[4] Also before the Court is Northwest's Motion in Limine to Preclude Plaintiffs from Presenting any Expert Witnesses and Limiting Lay Witnesses to the Plaintiffs Themselves (Doc. No. 22) on the grounds plaintiffs failed to properly identify witnesses during discovery.  Plaintiffs provided names of witnesses but no addresses or other identifying information.  Plaintiffs concede that they have no expert testimony but provided witness information to the best of their knowledge and that Northwest would have the passenger information.  Given the Court's summary judgment ruling, this motion is MOOT.

[5] Northwest complied with the Court's motion practice guidelines for a motion for summary judgment.  Specifically, Northwest filed a statement of material facts not in dispute.  Northwest also attached highlighted exhibits.  Plaintiffs did not comply.  They failed to respond to the statement of material facts and did not highlight their exhibits.  As such, the background is taken from Northwest's statement of material facts which, in light of plaintiffs' failure to respond, is uncontroverted.

[6] Prior to discovery, Plaintiffs maintained that the events occurred on an April 19, 2009 flight from Miami to Detroit.  Northwest, however, discovered that the flight in question was Plaintiffs' return flight from Jacksonville to Detroit on April 23, 2009.  Plaintiffs have not disputed this.  Thus, the April 19, 2009 date, which the Court used in its Memorandum and Order Denying Defendant's Motion to Dismiss, is incorrect.

approximately thirteen (13) relatives; all had just returned from a cruise.  Their claims are based on the alleged actions of a Flight Attendant Doe that occurred during the boarding process before the aircraft left for Detroit and also while the aircraft was moving on the ramp.

Plaintiffs were among the last passenger to board the aircraft.  The aircraft was a DC-9 and there were over 120 passengers aboard.  Hammond had three (3) pieces of carry-on luggage, including a rolling bag, garment bag and a purse.  Alexander also had three (3) pieces of carry-on luggage, including a carry-on bag, laptop computer and a purse.  When plaintiffs got to their assigned seats, the overhead compartments above their seats were already full.

Hammond testified at deposition that despite the overhead bins being full she placed her luggage in the then un-closable overhead compartment.  Alexander testified at deposition that the Flight Attendant Doe "started telling us [Plaintiffs] that we had to find somewhere to put our bags because we have to take a seat."

Hammond explained that, as a flight attendant herself, knowing the rules and regulations, she requested that Flight Attendant Doe make an announcement to other passengers to put their smaller luggage under their seats to allow more room in the overhead bin above the Plaintiffs' seats.  Flight Attendant Doe informed plaintiffs that the announcement had already been made.

Flight Attendant Doe then informed the Captain of disruptive behavior and threats by passengers, before the aircraft door was closed.  In Flight Attendant Doe's incident report, she states that after informing the Captain, an elderly woman approached her and said plaintiffs were her daughters and asked that they not be removed.  Flight

Attendant Doe told the woman to inform plaintiffs that they needed to follow instructions and to stop their threatening behavior. Flight Attendant Doe then called the Captain and reported that plaintiffs had settled down.

Plaintiffs bags were eventually stowed by flight attendants with the help of other passengers and plaintiffs took their seats.

The aircraft left the gate, beginning to taxi to the runway. The crew was preparing for take-off, a critical phase of flight. During critical phases of flight, crew members may only perform those duties required for safe operation of the aircraft.. During this critical phase, Alexander asked Flight Attendant Doe for her badge and name. Flight Attendant Doe gave Alexander a piece of paper with her name on it. Alexander testified at deposition that she then asked Flight Attendant Doe "Can we see your badge so that we can know that this information is correct that you've given us?" Flight Attended Doe says that Alexander accused her of lying about her name and Alexander grabbed her and ran an ink pen across her name tag. At that point, Flight Attendant Doe heard Hammond say "Just wait until we are up in the air."

Hammond testified at deposition that at this point, Flight Attendant Doe said "That's it. That's it. We're going back to the gate." Flight Attendant Doe again called the Captain and reported plaintiffs' behavior. The Captain altered the appropriate authorities and stopped the departure.

The Jacksonville Aviation Authority Police responded and were informed by the Captain that passengers Hammond and Alexander were causing a disturbance. The Authority Police removed plaintiffs from the flight. Plaintiffs were not arrested, were not handcuffed, and were not detained. However, they were asked to leave the aircraft.

4

The Authority Police report also relates the officers advised other family members traveling with Plaintiffs that if there was going to be any further incident on the plane they would have to exit right then and those other family members advised that there would be no further incidents.

### III. Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50.

IV. Analysis

A. Assault

An assault is defined under Michigan law[7] as (1) an intentional, unlawful threat or offer to do bodily injury by force (2) under circumstances that create a well-founded fear of imminent peril (3) coupled with the ability to carry out the act if not prevented. Tinkler v. Richter, 295 Mich. 396 (1940); Espinoza v. Thomas, 189 Mich. App. 110, 119 (1991).

In their complaint, plaintiffs allege "That Defendant Northwest's agent [Jane Doe]...became indignant and agitated and began to talk and act hostile and threatening to Plaintiff Hammond." (See Complaint, ¶14). They further allege "[t]hat because of the language and conduct of Defendant's agent [Jane Doe]...aggressiveness toward Plaintiff Hammond put her in fear of creating a battery..." (See Complaint, ¶15).

At deposition, Hammond testified that Flight Attendant Doe made the following statements to her:

    a. "You're going to have to put your luggage somewhere else or we're going to have to check it." (Hammond dep. at p 63);

    b. "Oh, you going to be a problem." (Id.);

    c. "I'll be back with it." (Id. at p. 64);

    d. "That's it. That's it. We're going back to the gate." (Id. at p. 65).

Alexander testified at deposition that Flight Attendant Doe made the following statements to her:

    a. "I already – I asked them and I made an announcement." (Alexander dep. at p. 54);

---

[7]The parties have cited Michigan law.

b. "Here. Here, it is." (Id. at p. 57);

c. "That's it. That's it. I'm turning this plane around." (Id. at p. 59);

d. "You all better hurry up." (Id. at p. 65);

e. "I'll have you all put off. I can do that...I can take care of all of you." (Id. at pp. 66, 67).

None of the statements attributed to Flight Attendant Doe by plaintiffs amount to an intentional and unlawful threat or offer to do bodily injury. The statements were made in an aircraft with 120 passengers, along with crew members. The statements attributed to Flight Attendant Doe were simply directions to the passengers on how to respond and how to get ready for the flight, particularly as to how to stow baggage. By purchasing their tickets, Plaintiffs impliedly agreed to follow the instructions of the flight attendant. Moreover, Plaintiffs were traveling with thirteen (13) other family members, including male and female adults. This setting did not create a well-founded fear of imminent peril.

Further, there is no testimony by Plaintiffs that Jane Doe flight attendant ever touched either plaintiff or put them in fear of a battery. In fact, Flight Attendant Doe's report states that Alexander touched her.

All of the incident reports attached to Northwest's motion confirm Flight Attendant Doe's version of the events, i.e. that plaintiffs were disruptive and threatening and that Flight Attendant Doe was attempting to have Plaintiffs comply with her instructions. The Lead Flight Attendant's Report states that plaintiffs demanded to know which passengers seated around had placed bags in their overhead bin and "with expletives, urged them to get up and move their bags out of the space." The Lead Flight

Attendant's Report also states that "upon final cabin check and taxi out the two [Plaintiffs] began to argue in loud voices with the flight attendants, using expletives, and the phrase was mumbled, 'Just wait until we get up into the air.'" The Pilot's Report states in part: "On taxi out, the first sister and another sister (they apparently were traveling with a large family) became disruptive. We returned to the gate (law enforcement was waiting) and the two sisters were removed. The remainder of the flight was uneventful."

There is no evidentiary basis – based on Plaintiffs' narrative of what occurred – to support the necessary element of a "threat or offer to do bodily injury by force...under circumstances that create a well-founded gear of imminent peril." Reasonable minds could not differ on this. Summary judgment is therefore appropriate on Plaintiffs' claim of assault.

### B. Intentional Infliction of Emotional Distress

In order to establish a claim for intentional infliction of emotional distress, a plaintiff must establish: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." Lewis v. LeGrow, 258 Mich. App. 175, 196 (2003). The first element requires conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id.

Given that the Court has determined that Flight Attendant Doe's statements do not amount to an assault, it follows that her conduct was neither extreme or outrageous. Rather, Flight Attendant Doe was following applicable rules and regulations for dealing

8

with disruptive passengers.[8] At best, Flight Attendant Doe instructed Plaintiffs to properly stow their carry-on bags, advised them that announcements had already been made, gave plaintiffs her name, and stating that they could be removed. This is not extreme and outrageous conduct. There was no intent or recklessness. Reasonable minds could not differ on this. Summary judgment is also appropriate on Plaintiffs' intentional infliction of emotional distress claim.

C.  Federal Law

Northwest also says that Northwest is entitled to immunity from Plaintiffs' tort claims because the record shows all of the actions taken by Northwest, including Flight Attendant Doe, were reasonable. This argument is similar to the argument Northwest raised in its motion to dismiss–that Plaintiffs' claims were barred by the Federal Aviation Act which states in part that "assigning and maintaining safety [ranks] as the highest priority in air commerce." 49 U.S.C. §40101(a)(1). The Act also states,

> Subject to regulations of the Under Secretary, an air carrier, intrastate air carrier, or foreign air carrier may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety.

49 U.S.C. §44902(b). A carrier's refusal to transport a passenger cannot give rise to a claim for damages unless the carrier's decision was arbitrary and capricious. Williams v. Trans World Airlines, 509 F.2d 942, 948 (2d Cir.1975); Schaeffer v. Cavallero, 54 F. supp. 2d 350, 351 (S.D.N.Y.1999). It is the plaintiff's burden to show that the decision not to transport was arbitrary and capricious. Cerqueira v. American Airlines, 520 F.3d 1 (1st Cir. 2008).

---

[8] Northwest also argues that plaintiffs have no evidence of damages required to support this claim. The Court declines to address this argument.

Given the record at the motion to dismiss stage, the Court could not determine whether Flight Attendant Doe's actions were reasonable. As such, the Court could not conclude whether the Act barred Plaintiffs' claims. However, given the record as it now stands, the Court can say that Flight Attendant Doe acted reasonably in responding the Hammond and Alexander's behavior on the aircraft. Thus, it is fair to say that Northwest acted within its authority under §44902(b) to remove Hammond and Alexander from the flight. This provided an additional ground for summary judgment.

V. Conclusion

For the reasons stated above, Northwest's motion for summary judgment is GRANTED. This case is DISMISSED.

SO ORDERED.

S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: July 19, 2010

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 19, 2010, by electronic and/or ordinary mail.

S/Michael Williams
Relief Case Manager, (313) 234-5160